IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KAROLE A. TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-00448-CV-W-NKL-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Karole Turner challenges the Social Security Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et. seq*.

Turner argues that the Administrative Law Judge ("ALJ") erred by: (A) finding Turner's depression non-severe; (B) weighing a single decision maker's opinion as if it were a medical opinion; (C) giving improper weight to, failing to state the weight given to, or failing to discuss medical opinions; (D) failing to explain inconsistences between Turner's residual functional capacity and medical evidence in the record; and (E) failing to make specific findings on the demands of Turner's past relevant work. Because the Court is persuaded by many of these arguments, and because substantial evidence on the record does not exist for the ALJ's finding Turner not disabled, the Court REVERSES the ALJ's decision and instructs the Commissioner to grant Turner benefits.

1

**I.      Background**

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1]  Turner filed an application for disability benefits in September 2003, alleging diabetes, arthritis, depression, and diverticulitis. Turner initially alleged her onset date to be March 6, 2000, but later amended that date to April 1, 2003, to coincide with the date she accepted early retirement and stopped working.

An ALJ denied Turner's application in November 2005.  In September 2007, after hearing oral argument, the Court reversed the ALJ's decision and remanded for further proceedings because there was not substantial evidence to support the ALJ's conclusion that Turner's emotional problems were not severe and because the ALJ did not adequately explain the specific evidence relied on for Turner's residual functional capacity ("RFC"). (Tr. 387).  On the latter point, the Court specifically required the ALJ to explain why he did not incorporate into Turner's RFC the functional limitations opined by Dr. Barnes.  An ALJ denied Turner's application once more in August 2008.  The Appeals Council remanded that decision for further proceedings.  An ALJ again denied Turner's application in November 2009.  This time the Appeals Council denied Turner's request for an appeal, rendering it a final decision reviewable by the Court.

As part of the most recent ALJ decision, the ALJ determined Turner's RFC to be, in relevant part, lifting no more than 10 pounds occasionally and less than 10 pounds frequently, sitting no more than 6 hours in an 8 hour workday, standing and walking no more

---

[1] Portions of the parties' briefs are adopted without quotation designated.

than 2 hours total in an 8 hour workday with the need to shift positions occasionally, from standing to sitting, for the purpose of stretching. (Tr. 343). The ALJ concluded, based on the testimony of a vocational expert, that Turner could perform her past relevant work as a secretary, dispatcher, or receptionist. (Tr. 344).

### A. Medical Records

On May 31, 2002, Dr. Elias confirmed by colonoscopy that Turner has extensive diverticulosis. (Tr. 117, 120). In addition to a fiber supplement, a trial of Bentyl was prescribed for her recurrent lower abdominal discomfort and irregular bowel movements. (Tr. 117). Dickson-Diveley Midwest Orthopaedic Clinic, Inc., noted Vicodin was making Turner sick following left carpal tunnel surgery on 9/17/02, and Extra Strength Tylenol was given. (Tr. 213).

Turner was initially seen on June 14, 2003, at Madison Avenue Psychological Services. Her symptoms of depression were lasting longer and were more persistent. The diagnosis was dysthemias and major depressive disorder, recurrent, moderate. (Tr. 131). Turner was placed on Zoloft. (Tr. 131). Turner was seen again on 6/27/03, with a diagnosis of depression for which she was prescribed Zoloft. (Tr. 133).

Dr. Mahmoud is Turner's primary treating physician and continued to treat Turner throughout the pendency of this matter. Records begin on 5/15/02, when Turner was seen for bloody stool. Turner returned on 5/16/02, with lower abdominal cramping and bloody, mucus stool. She had had some problems with left upper quadrant pain since the new year. Rectal bleeding was probably from diverticular disease. A colonoscopy was scheduled. (Tr.

3

172). On 2/27/03, Turner had some back pain and difficulty sleeping. Dr. Mahmoud instructed her to continue her medication for the diabetes mellitus. (Tr. 165). On 4/30/03, Turner was seen for pain in her left thumb and follow-up of her multiple health problems. Her left thumb was swollen on examination. There was tenderness on the base and slight restriction of motion. X-ray showed minimal degenerative joint disease changes. (Tr. 168). She was referred to an orthopedic surgeon.

On 6/13/03, Turner was experiencing depression with "no reason for her to be," was not motivated, and had no interest in anything. Dr. Mahmoud had a long talk with Turner about her depression and referred her to a psychologist. (Tr. 166). Turner returned on 7/28/03, with ears that were desquamating and erythematous as well as situational depression. (Tr. 164). In follow-up on 9/8/03, Turner was on Glucophage and Zoloft. The Zoloft was making her a bit dizzy or lightheaded but her depression was better. She had sacroillitis, worse when she stands up or sits for a period and gets up. Turner returned to see Dr. Mahmoud on 10/12/04, for her annual exam. She was on Avandamet for her diabetes, which was changed from Glucophage previously. Her arthritis had been acting up – particularly in her low back. Dr. Mahmoud noted that Turner cannot sit or stand up for any length of time and could not return to any sort of desk job. Her depression appeared to be stable. She was to continue with her medications. (Tr. 207).

On 2/1/05, Turner reported having no motivation. The Zoloft was making her confused. Her right hand was painful and she was having a loss of strength. She was having back pain with radiculopathy which is longstanding – the pain was in her hip and it was such

4

that she cannot sit down, stand or walk for any period of time. (Tr. 204). Turner's diabetes was under fair control – she had hyperlipidemia, chronic back pain, osteoarthritis with probable carpal tunnel of the right hand and a history of diverticulitis. (Tr. 204). Turner returned on 6/7/05, without significant improvement in her chronic depression on Cymbalta. Diabetes was under fair control and she had hypertension, hyperlipidemia, chronic depression, and probable chronic bronchitis. (Tr. 203). In August of 2005, Turner was having back pain, which started when she bent over the sink to wash her hands. (Tr. 459). The pain radiated to her upper thigh. (Tr. 459). Turner had reactions to the Cymbalta, which made her feel dizzy, jerky, nauseous, and off-balance. (Tr. 459). Examination confirmed tenderness in the low back area and pain in the right hip. (Tr. 458). The diagnoses included low back pain, severe vasomotor symptoms, and intolerance to Cymbalta. (Tr. 458).

On 9/20/05, Turner was seen with lower abdominal pain going all the way up to her lumbar area and down to her thigh. (Tr. 457). There was a trace of blood in the urinalysis and tenderness on examination of the pelvis. Turner was referred to urology. (Tr. 457). Dr. Mahmoud's notes from 11/28/05, reveal Turner has chronic back pain, which is recurrent with a recent flare up. (Tr. 456). Turner wanted to try Mobic; due to her gastrointestinal problems she cannot take nonsteroids. (Tr. 456). Turner has occasional flares of her diverticulitis. (Tr. 456). The assessment was diabetes mellitus; chronic back pain, recurrent; history of diverticulitis; chronic depression, stable. (Tr. 456). On 7/12/06, Turner's diabetes was in "fair" control. (Tr. 453). Turner was also seen for her chronic left shoulder pain, which hurts when she goes above shoulder level and was constantly aching. (Tr. 452). Dr.

5

Mahmoud refilled her Valium, prescribed Celebrex, and referred her to Dr. Hall. (Tr. 452).

On 10/29/06, Turner was having abdominal pain and Dr. Mahmoud found tenderness on objective examination of Turner's left lower abdominal area. (Tr. 451). Diverticulitis and abdominal pain, diabetes, and chronic shoulder pain were noted. (Tr. 451). Turner was prescribed Cipro, Flagyl, and Darvocet. (Tr. 451). On December 5, 2006, Turner was noted to have type II diabetes which was under "fair" control, chronic shoulder pain, chronic depression, and diverticulitis. (Tr. 449). Turner's pain was worse in the evening, on elevation, across the chest, and behind the back, with increased difficulty with household chores. (Tr. 495).

Notes from Dr. Mahmoud on September 18, 2007, show Turner was having right-sided stiffness in her neck on wakening and when going to bed. She was having pain in both knees and her left hip. (Tr. 447). On 12/4/07, Turner was seen for annual examination noting diagnoses of diabetes mellitus and chronic depression, which was improving. (Tr. 446).

Dr. Mahmoud examined Turner on 7/11/08, finding recurring low back pain due to degenerative joint disease and intermittent low abdominal pain with burning. (Tr. 536). Turner's back pain is relieved with rest and Darvocet. (Tr. 536). Turner continued to take Zoloft for chronic depression, stable. (Tr. 536). Notes from 4/28/09, reveal Turner's bowels were still bothering her with abdominal pain and arthritis which were keeping her from sleeping at night. (Tr. 515). The left side of her abdomen was burning and she had sharp pains all the time. (Tr. 515). Turner appeared anxious and there was tenderness to palpation

6

of the left lower abdomen and pelvic area. The assessment was recurrent, chronic left lower abdominal pain/pelvic pain probably due to acute diverticulitis, hemorrhoid, anxiety, diabetes mellitus, osteoarthritis. (Tr. 515). Cipro, Flagyl, and suppositories were refilled. (Tr. 515).

### B. Opinion Evidence

Dr. Israel examined Turner on one occasion on 7/16/05, at the request of the Commissioner. (Tr. 244). Turner reported her medications upset her stomach and she feels dizzy. (Tr. 245). Turner no longer goes to Madison Psychological Services as she no longer has insurance. (Tr. 246). Turner's motor activity is slow and she appears to be in pain as she walks. (Tr. 246). Her mood during the examination reflects mild anxiety. (Tr. 246). Turner feels hopeless and worthless primarily because of physical problems. (Tr. 247). Turner has adjustment disorder with depressed mood. Turner should be able to adapt to a work-related environment and interact socially if she can deal with her pain. Her adjustment disorder symptoms are not severe enough to interfere with her functioning on the job. (Tr. 247). Turner's ability to maintain attention/concentration is fair. (Tr. 249). Turner's ability to maintain personal appearance is fair and the doctor notes that pain is sometimes a factor in personal appearance. (Tr. 250).

Turner was seen one time on July 23, 2005, by Dr. Barnes at the request of the Commissioner. (Tr. 252). Turner's gait was slow with an antalgic gait. (Tr. 254). There is decreased mobility of her hip joints bilaterally. There was also mild swelling of her DIP and MIP joints. Dr. Barnes opined Turner was cooperative and gave good effort. (Tr. 254). Dr. Barnes noted lifting and carrying are impacted by Turner's impairments. She can stand

7

and/or walk a total of 2 hours in an 8 hour workday. (Tr. 258). In Dr. Barnes' opinion, Turner must periodically alternate sitting and standing to relieve pain or discomfort. (Tr. 259). Pushing and pulling are affected by Turner's impairment. (Tr. 259). Turner appears to have osteoarthritis in her hands and he would suspect arthritic changes in her hips, knees, and back, making sitting or standing uncomfortable if done for long periods of time. Pushing and pulling would likely exacerbate the pain from the arthritis. Turner's ability to finger would be limited to occasional due to osteoarthritis making fine motor use of her hands difficult. (Tr. 260).

Dr. Chernoff was hired by the Commissioner to testify via telephone at the first hearing. (Tr. 302). Dr. Chernoff opined Turner has diabetes with no impairment secondary to that. She has pretty severe diverticulitis with bouts of abdominal pain on the left side and intermittent re-constipation and her complaints related to that would be credible. Her main problem appears to be back pain and left hand pain. There may be some sort of nerve irritation explaining the thumb pain. (Tr. 303). The alternate diagnosis is degenerative osteoarthritis of the metacarpal/carpal joint, the CMC joint of the thumb, which is extremely common. (Tr. 304). Turner's complaints that she is unable to hold a phone or hold anything for any period of time is credible. Turner's severe back pain is consistent with her treating physician's statement that Turner has sacroiliitis. (Tr. 304).

In Dr. Chernoff's opinion, Turner does not meet or equal a listing. Turner maybe can lift 20 pounds occasionally but she is going to be a one-handed lifter because of the hand pain. (Emphasis added). (Tr. 305). She is not going to be able to use the left hand because

8

of her credible pain. She would be limited to 2 hours in an 8 hour day of stand/walk. Turner would be limited to occasional bending and squatting and so on. She would have to avoid fingering and handling with the left hand. (Tr. 305).

Dr. Kelly examined Turner one time on 4/16/08, at the request of the Commissioner. (Tr. 501). Turner had decreased ranges of motion of the left shoulder, right ankle, and spine. (Tr. 502). In normal standing position, there is contraction of the paraspinous muscles requiring hyperextension for relief. (Tr. 502). The hyperextension produces increased discomfort in forward flexion. (Tr. 502). The impression after objective examination was degenerative disc disease and arthritis of the spine with restricted motion of the spine and lower back pain with referable pain in the lower extremities. (Tr. 502). Also diagnosed were past contracture of the left glenohumeral joint with resident range of motion loss, history of heel spur on the right with range of motion loss of the right ankle, history of diverticulosis, diabetes, and chronic bronchitis. (Tr. 502). Cervical range of motion was limited. (Tr. 505). Dorsi-flexion of both ankles was limited – limited to 0 on the right. (Tr. 505). Flexion was limited to 45 degrees (of 90). (Tr. 505).

Dr. Kelly completed a form indicating Turner can frequently lift and carry up to 10 pounds, occasionally 20 pounds (Tr. 507), sit for 30 minutes, stand for 20 minutes, walk for 30 minutes at one time, sit a total of 4 hours, stand a total of 3 hours, and walk a total of 4 hours in an 8 hour workday due to back pain requiring position changes every 20 to 30 minutes. (Tr. 508). Turner is limited to occasionally reaching overhead with her left arm and can frequently handle, finger, feel, push/pull. (Tr. 509).

9

Dr. Golon testified at a hearing held on 7/18/08. (Tr. 606). Dr. Golon is a board-certified psychiatrist. (Tr. 606). Dr. Golon opined Turner suffers from major depression. (Tr. 612). Dr. Golon testified Turner's impairment is non-severe and agrees with Exhibit 4F that Turner has mild limitations in activities of daily living, social functioning, concentration, persistence, and pace with one or two episodes of decompensation. (Tr. 612). Dr. Golon further opined Turner would have a problem 10 to 15 percent of the time. (Tr. 613). The stress of work can sometimes make depressive symptoms worse. (Tr. 614). Dr. Golon did not examine or treat Turner and testified via telephone.

## II.     Discussion

In reviewing a denial of disability benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision." *Cox v. Barnhart*, 245 F.3d 606, 608 (8th Cir. 2003) (internal quotes omitted).

### A.     The ALJ's Finding Turner's Mental Impairments "Non-Severe"

Turner points out that the Court found, in its original remand Order on April 5, 2007, that there was not substantial evidence in the record for the ALJ's conclusion that Turner's mental impairments were non-severe under the Act. The Commissioner argues that in light of evidence developed since that finding, substantial evidence now exists for the ALJ's most recent finding that Turner's mental impairments are non-severe. But Turner correctly points out that all of the record evidence cited by the Commissioner to support his argument

10

predates April 5, 2007, with the exception of Dr. Golon's opinions. As to Dr. Golon's opinions, Turner argues that the ALJ never mentions Dr. Golon's opinions in her decision, that Dr. Golon's conclusions are themselves based on pre-April 5, 2007, data, and that Dr. Golon's testimony – which noted that Turner had major depression, would have some functional limitations in the workplace due to that depression, and that improvement in Turner's condition could be due to her not currently being exposed to the stress of a workplace (Tr. 612-14) – are ambiguous at best in their support of the ALJ's finding. For these reasons, the Court finds that substantial evidence still does not exist for the ALJ's finding that Turner's mental impairments are non-severe under the Act. The ALJ erred in this finding.

### B. The ALJ's Weighing of a Single Decision Maker's Opinion as if it were a Medical Opinion

Turner argues that the ALJ erred in giving weight to the RFC assessment of a disability examiner, or single decision maker ("SDM"), who the ALJ mistook for medical personnel. "SDM-completed forms are not opinion evidence at the appeal levels." Program Law Operations Manual Systems, Section DI 24510.050. The Commissioner concedes that this examiner was not a physician and that her RFC assessment was not entitled to any weight, but essentially argues that the error is harmless. The Commissioner appears to suggest that because the examiner's assessment is less suggestive of disability than Turner's ultimate RFC, the ALJ must not have weighed heavily the examiner's assessment. [Doc. # 14 at 21]. The Court disagrees that the error is harmless.

In considering the medical evidence to determine Turner's RFC, the ALJ observed that

11

the limitations assigned in treating physician Dr. Mahmoud's January 31, 2005, questionnaire, if accurate, would "preclude all competitive employment." (Tr. 342). The ALJ accorded "little weight to the above-cited assessment of Dr. Mahmoud as it is not consistent with the totality of medical evidence...." *Id*. When the ALJ made this statement, she mistakenly thought that the medical evidence included the RFC assessment of the disability examiner. Although Turner's RFC is more suggestive of disability than the examiner's assessment, this suggests that the ALJ, in assigning an RFC to Turner, struck a balance between two conclusions, only one of which the ALJ was permitted to consider. On this record, it is impossible for the Court to know whether this error would in fact affect the ultimate determination of whether Turner is disabled, but it appears likely that the error made a difference. In light of this error, the Court cannot find that substantial evidence exists for the RFC that the ALJ assigned to Turner.

### C. The ALJ's Discussion of and Assignment of Weight to Medical Opinion Evidence

Turner argues that the ALJ erred in failing to discuss the opinions of State agency medical consultants Dr. Chernoff and Dr. Golon. "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant," as well as for "any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]." 20 C.F.R. § 404.1527(f)(2)(ii). The Commissioner essentially argues that this, too, is harmless error, because (1) these

opinions do not come from treating physicians and would not, by themselves, constitute substantial evidence for a conclusion; (2) inconsistencies in these opinions would support the ALJ's discrediting them; and (3) these opinions are largely consistent with the ALJ's decision.

But the Commissioner's arguments simply illustrate the importance of the rule violated by the ALJ. Because the ALJ did not discuss the opinions of Drs. Chernoff and Golon, the Court cannot determine whether the ALJ considered these opinions, what weight the ALJ gave to these opinions, and whether the ALJ only considered the conclusions in these opinions that supported the ALJ's conclusions. This is especially troubling here, where the ALJ discredited the opinion of a treating physician that would lead to Turner being found disabled as "inconsistent with the totality of medical evidence." (Tr. 340). Thus, the Court cannot agree on this record that the error is harmless.

Turner argues that the ALJ erred by failing to state the weight given to the opinions of State agency consultant Dr. Israel. The Commissioner does not address this argument in his briefing. The Court finds this omission to be error.

Turner also argues that the ALJ erred by failing to state the weight given to the opinions of one-time consultative examiners Dr. Barnes and Dr. Kelly. The Commissioner points out that the ALJ specifically addressed both of these opinions and that the significant limitations in Turner's RFC reflect that the ALJ considered those opinions, citing *Choate v. Barnhart*, 457 F.3d 865, 870 (8th Cir. 2006). But in the ALJ decision before the *Choate* court, the ALJ discussed the weight he gave to both of the medical opinions in question, and

13

the court merely determined whether that weight was appropriate. *See id.* Here, the Court cannot determine whether the weight given to these treating sources was appropriate because the ALJ did not discuss the weight she gave to either of the opinions. This constitutes error.

Finally, Turner argues that the ALJ erred by giving little, rather than controlling, weight to the opinions of treating physician Dr. Mahmoud. "ALJs are not obliged to defer to treating physician's medical opinions unless they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record." *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (internal quotes omitted). But an ALJ can only reject medical evidence "based on contradicting medical evidence, not on the ALJ's own judgments or opinions." *See id.*

Turner argues that the ALJ incorrectly found Dr. Mahmoud's conclusions to be inconsistent with Dr. Mahmoud's own treatment records. Specifically, Turner argues that by referencing Dr. Mahmoud's notes describing Turner's condition as "improving" or "stable" the ALJ "has isolated 3 notations from the over 5 years of medical evidence." [Doc. # 9 at 21]. The Commissioner points to Dr. Mahmoud's further treatment notes suggesting that Turner's diabetes was fairly well-controlled, the lack of evidence of end-organ damage from diabetes, a lack of complaints of fatigue, Turner's conservative treatment, and Turner's level of activity during the treatment period to suggest that the ALJ accurately characterized Dr. Mahmoud's treatment notes as generally inconsistent with Dr. Mahmoud's conclusions. The Commissioner also points out an inconsistency in the suggestions in two forms filled out by Dr. Mahmoud in the same day.

14

After a close review of Dr. Mahmoud's treatment notes, the Court concludes that the alleged inconsistencies in those notes do not form substantial evidence for discounting Dr. Mahmoud's conclusions. The ALJ is correct that Dr. Mahmoud's notes reflect that Turner's diabetes was fairly well controlled throughout the treatment period. But Dr. Mahmoud's notes consistently indicated that Turner is depressed; suffers from abdominal pain, hip pain, and back pain that makes it difficult to sit or stand for long periods; suffers from bowel complications from diverticulitis; and has difficulty using one or both hands. The ALJ's conclusion that these notes were so inconsistent with Dr. Mahmoud's conclusions as to justify giving little weight to those conclusions is not reasonable and impermissibly substitutes the opinion of the ALJ for medical evidence.

Turner also argues that because the ALJ relied on Turner's lack of treatment in discounting Dr. Mahmoud's conclusions, Turner was erroneously "disfavored because [s]he cannot afford or is not accustomed to seeking medical care on a regular basis." *Basinger v. Heckler*, 725 F.2d 1166, 1170 (8th Cir. 1984). Turner points out that her medical insurance would only cover three sessions with a mental health professional, and that she later lost medical insurance altogether. The record reflects that in at least one period Turner attended therapy when covered by her insurance and discontinued when further sessions would not be covered by her insurance. (Tr. 164). Turner argues that her actions in seeking treatment for mental health issues from a medical doctor, and Dr. Mahmoud's records reflecting that she prescribed Turner antidepressants, actually supports Dr. Mahmoud's conclusions given Turner's financial condition. The Commissioner does not directly address this argument.

15

The Court agrees that in light of Turner's financial condition and her actions in seeking treatment, the ALJ erred in relying in part on Turner's lack of treatment to discount the conclusions of Dr. Mahmoud.

The ALJ, in discounting the conclusions of Dr. Mahmoud, also noted that some of Dr. Mahmoud's findings rendered an opinion on the ultimate issue of disability. The Court agrees that the ALJ is not bound by Dr. Mahmoud's opinions on the ultimate issue of disability. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). But Dr. Mahmoud also presented specific functional limitations that could only be rejected in the face of conflicting medical evidence, rather than the ALJ's own opinion.

### D. The ALJ's Failure to Explain Inconsistencies Between Turner's Residual Functional Capacity and Medical Opinions on the Record

Turner argues that the procedural errors above demonstrate that the ALJ's RFC for Turner is flawed and require an award of benefits. Specifically, Turner argues that there is no medical evidence for the ALJ's finding that Turner is capable of sitting for six hours in an eight-hour workday. Dr. Mahmoud opined that Turner could only sit for two hours total in a workday (Tr. 342), and Dr. Kelly opined that Turner could only sit for a total of four hours in a workday. (Tr. 343). Substantial evidence did not exist for the ALJ to discount Dr. Mahmoud's opinions, and the ALJ erred in failing to explain why she did not adopt Dr. Kelly's opinions. SSR 96-8p, 1996 WL 374184 at *7. The Commissioner argues that the RFC contained significant limitations, which suggests the ALJ considered Dr. Kelly's opinions. But the Commissioner has not pointed the Court to any medical evidence that

16

Case 4:11-cv-00448-NKL   Document 16   Filed 01/17/12   Page 16 of 19

could support the ALJ's finding that Turner is capable of sitting for six hours in a workday. The Court thus concludes that the ALJ improperly substituted her own opinion, rather than relying on medical evidence, to form an RFC.

Turner also argues that there is no medical evidence for the ALJ's finding that Turner needed "to shift positions occasionally, from standing to sitting, for the purpose of stretching." (Tr. 343). The Court agrees that this is an oversimplification of Dr. Kelly's opinion that Turner could only sit for thirty minutes at a time (Tr. 508) and Dr. Barnes's opinion that Turner "must periodically alternate between sitting and standing to relieve pain and discomfort." (Tr. 259). The ALJ erred by diluting these medical opinions without explanation of why she was doing so. Here, again, the Commissioner argues that the ALJ included significant limitations, which is evidence that the Commissioner gave some consideration to these opinions. But here, again, the Commissioner points to no medical evidence suggesting that the ALJ's statement about occasionally standing up to stretch is an accurate description of Turner's condition. The ALJ erred in substituting her judgment for medical evidence.

Given these errors, the Court also agrees that Turner is disabled and that it is appropriate to award benefits at this time. Although Turner has the burden of demonstrating that she is disabled, the ALJ has failed over a period of over eight years to develop a record with substantial evidence for the decision that Turner is not disabled. The ALJ admitted that the opinions of Turner's longest-treating physician, if true, would render her unable to work. The ALJ attempted to undermine these opinions by drawing out isolated and vague

17

statements in the record that contradict Dr. Mahmoud's conclusions. The ALJ also systematically omitted medical opinions pointing to serious limitations supporting Dr. Mahmoud's conclusion, or summarized these opinions and disregarded their conclusions without discussion. On the entire record before the ALJ, there is not substantial evidence to show that Turner is not disabled. The award of benefits is thus appropriate.

### E. The ALJ's Failure to Make Specific Findings on the Demands of Turner's Past Relevant Work

Turner also argues that the ALJ erred by not making specific findings regarding the mental and physical demands of her past work and comparing those findings to Turner's RFC. *See Ingram v. Chater*, 107 F.3d 598, 604 (8th Cir. 1997). The Commissioner argues that the ALJ was not required to make these findings because the ALJ enlisted a vocational expert to review Turner's file. The Court agrees that the ALJ's failure to make specific findings constitutes procedural error, although the use of the vocational expert, who necessarily considered the demands of past work in forming an opinion on Turner's ability to return to the job, renders that error a harmless error of opinion writing. *See Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992).

### F. The ALJ's Evaluation of Turner's Subjective Complaints

Turner did not initially raise the issue of the ALJ's evaluation of her subjective complaints in her Social Security brief. Regardless, the Commissioner spent four pages of his brief bolstering the ALJ's evaluation of Turner's complaints. Turner responded to these arguments in her reply brief. Because Turner has shown that substantial evidence does not exist for the conclusion that Turner is not disabled, and has done so without relying on an

18

argument that the ALJ improperly evaluated Turner's subjective complaints, the Court will not address this portion of the briefing.

## III. Conclusion

Accordingly, it is hereby ORDERED that Karole Turner's Petition [Doc. # 1] is GRANTED. The decision of the ALJ is REVERSED and remanded with instructions to award benefits.

                                                  s/ Nanette K. Laughrey
                                                  NANETTE K. LAUGHREY
                                                  United States District Judge

Dated: January 17, 2012
Jefferson City, Missouri